UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ΓABITHA ROWLAND, | ) | |
| ADMINISTRATRIX OF THE | ) | |
| ESTATE OF DANNY TYSON | ) | |
| WRIGHT, | ) | CIVIL ACTION NO. 04 11646 MLW |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EAGLE EYE FISHING | ) | |
| CORPORATION, | ) | |
| Defendant | ) | |

**DEFENDANT EAGLE EYE FISHING CORPORATION'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes the defendant, Eagle Eye Fishing Corp. ("Eagle Eye") and hereby opposes

the Plaintiff's Motion for Partial Summary Judgment.  In support of their Opposition, Eagle Eye

states as follows.

**I.    REPLY TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Eagle Eye does not, for the purposes of this opposition, take issue with the facts contained

in the Plaintiff's Statement of Undisputed Material Facts.  Eagle Eye respectfully submits that the

plaintiff's Motion for Summary Judgment should be denied because the plaintiff has not

established, as they must, that the facts entitle the plaintiff to summary judgment as a matter of

law.  However, Eagle Eye does respond to the Plaintiff's Statement of Undisputed Material Facts

as follows:

1.      **Eagle Eye admits that this is an accurate excerpt from the statement of Captain Walton.**

2.      Eagle Eye admits that this is an accurate excerpt from the statement of Captain Walton.

3.    Eagle Eye admits that this is an accurate excerpt from the statement of Marco Henrique

Williams.

4.    Eagle Eye admits that this is an accurate excerpt from the statement of Captain Walton.

Eagle submits that this account of events is disputed by the statement of Edward Mcarty,

**Exhibit A**, who states:

"Then I was on the deck dumping the ice over the side of the boat and I noticed
Jerome and Danny having words, but that is nothing new, it happens on the boat.
I guess they were arguing and then I thought they were done and I said 'come on
you guys got to work together.' And the, I went and sat up on the dock, and the
next thing I know, I look back and saw just kind of scrabbling, I didn't think they
were really fighting."

5.    Eagle Eye admits that these are accurate excerpts from the statement of Captain Walton,

Agent Gonzalez, the Death Certificate and the Report of Marine Accident, Injury or

Death.  However, Eagle Eye submits that in the Statement of Agent Gonzalez, she notes

that Dillon told her that "it was Mr. Danny Tyson who had the knife at all times until the

struggle began and he then took it away injuring Mr. Danny Tyson, in self-defense."  This

statement from Mr. Dillon creates a dispute as to the occurrence of the altercation and a

dispute as to who was the actual aggressor.

6.    Eagle Eye admits that these are accurate excerpts from the Police Report and Medical

Report.

7.    Admitted, but Eagle Eye submits that this is not a material fact.

8.    Admitted, but Eagle Eye submits that this is not a material fact.

## II.    ARGUMENT

A party is entitled to summary judgment "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2458, 2553 (1986).

Any doubt as to the existence of a genuine issue of material fact will be resolved against the moving party. Foley v. Matulewicz, 17 Mass.App.Ct. 1004, 1005 (1984). "Because the burden is on the movant, the evidence presented...always is construed in favor of the party opposing the motion and he is given the benefit of all favorable inferences that can be drawn from it." Id., citing 10A Wright, Miller and Kane, Federal Practice and Procedure §2727 at 124-125 (1983).

The Foley decision further establishes that a court "should not grant a party's motion for summary judgment 'merely because the facts he offers appear more plausible than those tendered in opposition, or because it appears that the adversary is unlikely to prevail at trial." Foley, 17 Mass.App.Ct. At 1005, citing Attorney Gen. v. Bailey, 386 Mass. 367, 370, 436 N.E.2d 139, cert. Denied, 459 U.S. 970, 103 S.Ct. 301, 74 L.Ed.2d 282 (1982). The court is not to weigh the truth of the evidence in determining a motion for summary judgment, but rather must determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

The plaintiff's Motion for Partial Summary Judgment should be denied not only because

3

there is a legitimate dispute as to how the incident occurred, but also because the fact that Dillon killed Wright does not, as a matter of law, render Eagle Eye liable under a theory of unseaworthiness. Although a warranty of seaworthiness extends to a vessel's crew, an analysis of unseaworthiness is factually driven because a finder of fact must determine whether the assault was done by a crew member with a wicked disposition or who was otherwise savage and vicious in nature. While some cases have held that it is possible for a plaintiff to establish the violent nature of a crew member through evidence of an attack with a dangerous weapon, these cases were decided based upon the circumstances of the particular incident. The cases favorable to the plaintiff's position stand for the proposition that the use of a dangerous weapon may be used as evidence that a seaman had a savage disposition. However, the opinions do not go so far as to hold that an attack with a weapon will subject the shipowner to automatic liability under the doctrine of Unseaworthiness, particularly the holding of the First Circuit in the Connolly case, infra.

As a starting point, there is a material factual dispute as to how the altercation that led to Mr. Wright's death occurred. The plaintiff claims that Mr. Dillon committed a premeditated and unprovoked attack on Mr. Wright. However, this contention is disputed by the statement of Edward Mcarty, **Exhibit A**, in which Mr. Mcarty states that they were arguing back and forth for some time, and that it didn't really appear that they were fighting, until Mr. Wright was killed. Additionally, a material dispute is created by Mr. Dillon's own statement contained in the statement of Agent Gonzalez in which he claims that he took the knife from Mr. Wright and acted in self defense. These accounts of the altercation, which differ substantially from the plaintiff's version of events, create a material dispute as to how the fight occurred and as to who

was truly the aggressor in the fight. Additionally, as contained in the Affidavit of Shore Manager James Budi, **Exhibit B**, it is believed that Mr. Wright was the instigator of the fight and that Mr. Dillon did not attack, but rather responded to Mr. Wright's attack. The facts of this case differ substantially from those in the relevant case law cited below.

It is well established that a ship owner is not liable for every injury that results from a fight between seamen. "The problem, as with many aspects of the law, is one of degree." Boudoin v. Lykes Bros. Steamship Co., 348 U.S. 336, 340, 75 S.Ct. 382, 385 (1955). As the plaintiff correctly points out, the Supreme Court in Boudoin affirmed the lower court in finding that the crew member rendered the vessel unseaworthy. However, this finding was not based merely on the fact that the seaman attacked a fellow crew member with a weapon (a bottle of brandy). The facts in that case, as developed at trial, also showed that (1) the seaman, while drunk, attacked the plaintiff in his room as he awoke from sleeping; (2) after attacking the plaintiff with the bottle, the seaman returned with a large knife which he also intended to use to attack the plaintiff; (3) the seaman created a disturbance by attempting to enter the sick-bay to once again confront the already injured crew member following the incident and threatened a mate; and (4) the seaman then left the ship and returned with another bottle of liquor, causing the captain to place him in irons. It was upon the basis of all of these facts that the lower court ruled that the seaman "was a person of dangerous propensities and proclivities..., violent character, belligerent disposition, excessive drinking habits, disposed to fighting and making threats and assaults." Id. However, the lower court's ruling was issued after a trial upon the merits of the case and not based upon the record on summary judgment.

In Miles v. Melrose, 882 F.2d 976 (5th Cir. 1989), a fight occurred on the vessel between

5

two crew members with the result being one crew member dead after being stabbed 62 times

with a knife. In discussing the standard for liability, the court stated that to establish

unseaworthiness, the plaintiff must provide that the crew member was not 'equal in disposition'

and seamanship to the ordinary men in the calling. Under this standard, a crew member who

participates in an ordinary sailor's brawl is not per se unfit. However, a crew member's violent

disposition may be proved by independent evidence with regard to his disposition or by direct

evidence showing that he launched a vicious and unprovoked attack. In <u>Miles</u>, the fact that the

seaman stabbed the other crew member 62 times supported the conclusion that this seaman was

not equal in disposition to others. But, again, this was after a trial and a factual determination by

a jury.

The plaintiff seeks to stretch the holdings in <u>Boudoin</u>, <u>Miles</u> and other cases to argue that

liability for unseaworthiness will automatically attach to a vessel where a crew member attacks

another with a weapon. These opinions were not, however, issued in the context of the plaintiff

moving for summary judgment. In most they <u>followed</u> a ruling by the finder of fact concerning

the 'wicked disposition' of the seaman in each case. Here, the plaintiff is asking the court to

make a ruling that this attack, as a matter of law, made the vessel unseaworthy, before any

findings of fact by a jury. It would be inappropriate for the court to make such a determination at

this stage. Rather, it is the province if the jury, after a full trial on the issue, to decide whether

Dillon was unequal in disposition to other seamen as a result of this incident, keeping in mind the

standard of <u>Boudoin</u> which requires a factual analysis on a case by case basis.

The Court in <u>Connolly v. Farrell Lines, Inc.</u>, 268 F.2d 653 (1st Cir. 1959) reached a

different conclusion than the court in <u>Boudoin</u>. In <u>Connolly</u>, the plaintiff was assaulted by a

fellow crew member while on shore in Liberia. The dispute occurred after an argument

following a dice game at a local bar. The plaintiff was struck in the head with a 3' wooden plank

causing injury but not death. Citing Boudoin, the court stated that the primary issue was whether

sufficient evidence was presented from which the jury could infer that the crew member had "a

proclivity for assaulting people" and was consequently "unequal in disposition to the ordinary

seaman." The First Circuit held that a ship owner is not liable for injuries resulting from every

sailor's brawl. However, a ship owner will be liable for Jones Act negligence, and the vessel

would be considered unseaworthy, if the assault is done by a crew member with a wicked

disposition or who is otherwise savage and vicious in nature. In the context of the Connolly case,

there was no evidence that the offending crew member had been engaged in any fights or

controversies prior to the incident at hand. Based upon the specific facts of this case, the lower

court directed verdicts in favor of the defendant on the plaintiff's Jones Act and Unseaworthiness

claims and the First Circuit affirmed.

An analysis of other similar cases demonstrate that the result of each case, with regard to

a vessel's unseaworthiness due to a vicious crew member, is fact dependent. In Clevenger v. Star

Fish and Oyster Co., 325 F.2d 397 (5th Cir. 1963), the first mate stabbed a fellow seaman in the

back with a four foot long ice chisel. The court held that under these circumstances (a deadly

attack from behind by a superior upon one under his command) that the vessel was unseaworthy.

However, the Fifth Circuit noted that such a determination is ordinarily a question of fact to be

determined by the trier of fact. Accordingly, their holding in this case, which reversed the lower

court's judgment in favor of the defendant on other grounds, was based upon the particular facts

of this case.

7

In the case at bar, Dillon stabbed the plaintiff three times, not 62 times as in <u>Miles</u>.  He did not stab him from behind, as the seaman did in <u>Clevenger</u>.  There is nothing to suggest that the attack was premeditated and the Affidavit of James Budi, **Exhibit B**, suggests that it was not a premeditated attack.  There is no evidence independent of this incident to suggest that Dillon otherwise was of a savage disposition or prone towards violent conduct.  To the contrary, Mr. Dillon had a reputation as a hard working and professional fisherman with no history of violent temper and no predisposition towards violence.  See Affidavit of James Budi, **Exhibit B**, Affidavit of Malcolm McLean, **Exhibit C**.  Like the Court stated in <u>Boudoin</u>, it is a "question of degree" as to whether this incident made Dillon unequal in disposition such that the vessel was unseaworthy.  It is a question to be resolved by the trier of fact.

The question of degree is critical for purposes of summary judgment.  While the Court in <u>Clevenger</u> held that an attack with a dangerous weapon could establish unseaworthiness as a matter of law, most court have held that an attack with a dangerous weapon could be <u>evidence of</u> a wicked and dangerous disposition.  See <u>Pashby v. Universal Dredging Corp.</u>, 608 F.2d 1312, 1314 (C.A. Hawaii 1979); <u>Calcagni v. Hudson Waterways Corp.</u>, 603 F.2d 1049, 1051 (2d. Cir. 1979).  It is a question for the finder of fact to determine whether the evidence proffered by the plaintiff establishes that Dillon was unequal in disposition to the ordinary seaman.  This is not a question to be resolved on summary judgment.

## III.    CONCLUSION

For the reasons stated above, Eagle Eye requests that the Court deny the Plaintiff's Motion for Partial Summary Judgment.

8

For the defendant:

/s/ Syd A. Saloman
Syd A. Saloman (BBO No. 645267)
Regan & Kiely LLP
85 Devonshire Street
Boston, MA 02109
(617) 723-0901
sas@regankiely.com